Frank Halpin, Defendant in Error, v. John J. Duffy, Plaintiff in Error.

Gen. No. 13,922.

VERDICT—*when not set aside as against the evidence.* A verdict will not be set aside on review as against the weight of the evidence unless it is clearly and manifestly so.

Action on the case. Error to the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Reversed, with finding of facts. Opinion filed April 3, 1908.

Statement by the Court. This is a writ of error prosecuted to reverse a judgment of the Superior Court in an action on the case brought by Frank Halpin, defendant in error, against John J. Duffy, plaintiff in error, to recover damages for injuries sustained by Halpin caused by a gun shot alleged to have been fired by Duffy on May 31, 1902.

The defendant below filed a plea of not guilty. The trial resulted in a verdict of $2,000 in favor of the plaintiff below against the defendant, and the court rendered judgment thereon.

It appears from the record that on the afternoon of May 31, 1902, a police officer of the city of Chicago was shot and killed at Forty-sixth street and Emerald avenue, in the city of Chicago. The murderer was reported to have gone toward Forty-sixth street and Stewart avenue, and at the time in question policemen on foot and in patrol wagons were moving about in the vicinity of Forty-sixth street, Stewart and Shields avenues, looking for the murderer. Plaintiff in error, who was at that time a police sergeant, hearing of the tragedy, ran from Union avenue to Stewart avenue, a distance of three blocks. On Stewart avenue were a number of railroad tracks running north and south. As Duffy arrived at Stewart avenue, a freight train

was passing south on one of the tracks on the east side of the street, and he was compelled to wait for it to pass at Forty-sixth street.

Frank Halpin, the defendant in error, and a man named Weingart, also ran east on Forty-sixth street to Stewart avenue about the same time, and all three men, with several others, were stopped in Stewart avenue by the passing train. They were on the north side of Forty-sixth street in Stewart avenue. Another police officer—John Klausen—had run east on Forty-sixth street about the same time, but a little in advance of ·Duffy. Klausen passed over the tracks ahead of the train and kept on to Shields avenue, the next street east of Stewart avenue. Police officer Burke then came to Forty-sixth street from the north on Shields avenue, and was only a few feet away from Klausen. James Burns, a barber, was standing on the tracks near Duffy. James O'Connor was also on the crossing near Duffy. William Thrumston was standing at an open window of a building on the north side of Forty-sixth street about midway between Stewart and Shields avenues.

Forty-sixth street at this point is fifty feet in width. The west line of Shields avenue is 210 feet east of the east line of Stewart avenue. Between Stewart avenue and Shields avenue at a point 110 feet from the east line of Stewart avenue, an alley runs from Forty-sixth street south. It is sixteen feet in width, and its east line is eighty-four feet west of the west line of Shields avenue.

The freight train had nearly passed, when Halpin and Weingart decided to return to their work and turned around, and in doing so Halpin faced Duffy. Duffy noticing a fresh scratch on Halpin's face, asked him where he was going. Without making any reply, Halpin ran northeast around the end of the passing train on the north side of Forty-sixth street and ran southeast toward the entrance to the alley on the south side of Forty-sixth street. Duffy, Burns and O'Con-

nor followed him. Duffy drew his revolver and called "Halt." Halpin did not stop, and Duffy fired a shot. The firing of this shot attracted the attention of Officer Klausen, who saw Halpin running southeast in Forty-sixth street near Stewart avenue toward the alley. Klausen then ran west on Forty-sixth street to meet Halpin, drew his revolver and called "Stop" to Halpin. Halpin did not stop, but ran into the entrance of the alley, where he was struck in the leg by a bullet, and fell to the ground.

GEORGE W. MILLER, FRANK L. CHILDS and ODE L. RANKIN, for plaintiff in error; EDWARD J. BRUNDAGE, Corporation Counsel, of counsel.

W. S. JOHNSON and HENRY R. RATHBONE, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

The question of fact contested on the trial was, Who shot Halpin? Officer Klausen testified that he fired the shot which struck Halpin. In this statement he is corroborated by plaintiff in error Duffy, James Burns, James O'Connor, William Thrumston and Thomas Burke. These six witnesses viewed the shooting from different points, and all were within short distances from the point where Halpin fell in the alley, between the buildings on either side of it. The evidence of these witnesses appears from the record to be unshaken on cross-examination. The testimony of each witness is consistent with itself, and accords substantially with all the others, and the undisputed facts in the case.

The testimony offered by defendant in error upon this question was given by Halpin and Frank Weingart. Halpin's testimony on his direct examination is that he and Weingart left their work of unloading furniture from a wagon and went on Forty-sixth place

east to the railroad tracks, where a long freight train was going south, and they waited there for it to pass by. While they were standing there Weingart suggested that they had better go back, as Murray, by whom they were employed, would be waiting for them. Thereupon they turned around and started to go back. He saw an officer who started to run towards him and said "Catch him," and pulled a gun and shot him. Halpin says he heard two shots. The first one seemed to pass by his ear, and the second hit him in the leg, and he fell into a policeman's arms standing on the other side of the railroad tracks at a telegraph post.

On his cross-examination Halpin says that he waited until the train went by, and then went east on Forty-sixth street to a point about half way between Stewart avenue and Shields avenue, and then started to go south through a driveway when the officer came around and said something to witness, and he turned around and started to go back. The officer said "Catch him" and sprang toward him. The witness then turned back to go east. The officer pulled a revolver and shot at him, but the shot did not strike him. When he heard the first shot he turned south and ran through the driveway, and while running into the driveway he was shot.

It will be observed that Halpin gives a very different account of what happened on his cross-examination from that given in his direct examination. The most material difference is as to the time and place when and where the officer first accosted him and fired the first shot. The inference from his direct examination is that before the train had passed and while he was west of it, on the tracks, he turned to go back to his work and was then and there shot by the officer.

In his cross-examination he says that the train had passed, and he had gone east on Forty-sixth street to a point about half way between Stewart avenue and Shields avenue and started to go south through the driveway when he was first spoken to by the officer,

and that when he heard the first shot he turned south and ran toward the driveway; that the second shot came right after the first and that between the shots he ran only about five feet.

Again there is a very material difference in his testimony on cross-examination and on the re-direct. In his cross-examination he testified:

"Q. And where did the bullet enter, on the outside or the inside of the leg? A. It came in here. (Witness indicating outside of leg.)

Q. The outside of the leg? A. Yes, sir."

On re-direct he testified:

"Q. Now, Mr. Halpin, point right out where that bullet went into your leg? A. There. (Indicating.)

Q. It is on the inside of your leg? A. Yes, sir."

Later on in his testimony on the re-cross examination on the same subject, he was asked: "Q. How do you know? A. That is what the doctor claims." When asked how he knew the officer who shot him, he said "I turned around and looked at him."

The witness Weingart's testimony does not agree with the testimony of Halpin, and his story challenges credence in some particulars.

According to the testimony of this witness, the sergeant was standing about five feet away from him while they were waiting for the train to pass. He testified: "We turned half way around and the officer looked at Frank (Halpin) and he throwed up his hands and made a grab at him, and Frank turned around and ran away, and run east, and then the officer pulled out a gun and shot at him twice." The officer was ten or fifteen feet away from Halpin when he shot the first time. Halpin was running northeast. After the second shot he saw Halpin "hopping along and hopping into another officer's arms." The other officer was east of the tracks. The officer who did the shooting "hollered 'Catch him, catch him'", after Halpin turned to run. "The railroad train didn't go

by until after Halpin was shot, then I walked across the tracks. * * * He was running kind of northeast away to get around the train. * * * He turned south after he was shot and kept on hopping.''

It is apparent from the mere statement of the testimony on behalf of defendant in error that Halpin's version of the shooting differs widely from the account given by Weingart; that it is inconsistent with itself, and that his personal knowledge as to who fired the shot, while he was running away from both Duffy and Klausen, whom he says he saw with a revolver in his hand, coming towards him from the east, is, to say the least, doubtful. And Weingart's testimony that Halpin was shot before the train went by, and hopped all the way over the tracks to the entrance of the alley, a distance of over one hundred and ten feet, before any one caught him, and fell into an officer's arms at that point, is quite unbelievable.

Turning now to the testimony of the other witnesses we find that Duffy says that as Halpin was running away from him and from fifty to seventy-five feet from him, he fired a shot in the air, and that he fired only one shot. He saw Officers Burke and Klausen east of him and saw Klausen point his revolver straight at Halpin and fire his revolver; and when Klausen shot, Halpin dropped on the ground and remained there.

Officer Burke, who was on Forty-sixth street just west of Shields avenue, says Klausen was west of him in the street; that he saw Halpin running east, and Klausen fired at Halpin, who fell and Klausen ran ahead of the witness and picked him up.

The witness Thrumston saw the shooting from an open window of the building on the north side of the street opposite the entrance to the alley. He testifies he saw Klausen shoot Halpin.

The witness Burns testified that he saw Duffy and Halpin when the latter started to run, and Duffy started to run after him, and fired a shot up in the air; that he, Burns, thinking Halpin was the person who

had killed the officer, started to run as soon as Duffy did and passed Duffy; that the witness saw Officer Klausen coming west to meet Halpin, and saw the officer shoot Halpin as Halpin turned into the alley.

The witness O'Connor testified that he had just come up and heard Duffy call "Halt" and saw Halpin start to run; that Sergeant Duffy fired a shot up in the air, and witness followed Duffy; that he saw Halpin run into the alley, and saw Klausen fire the shot that hit Halpin.

In addition to these witnesses, Officer Klausen against his own interest, testified that as he was going east on Forty-sixth street at the corner of Shields avenue he heard a shot, and turning around saw Halpin at the railroad tracks running east towards him. He called to him to stop, but Halpin continued running, and when he saw him about to disappear in the alley the witness fired a shot at him and he fell, and the witness ran to him and picked him up.

One other feature of the evidence must be noticed. The leg of defendant in error was shown to the jury. It is urged by counsel for defendant in error that the jury from an inspection of the scars on the leg could judge as to the direction from which the shot came; and this evidence tended to show that the bullet penetrated the leg on the inside and came out on the outside and lower down, thus showing that the shot must have been fired by Duffy.

The shot passed through the leg below the knee producing a compound fracture of the tibia or large bone of the leg. In the act of running the lower part of the leg is naturally thrown in a position so that if a shot fired from an easterly direction struck the leg when it was extended back it would enter the outside of the leg and come out on the inside higher up, and somewhat to the front of the leg. There is therefore no physical difficulty in the theory that the bullet fired by Klausen struck Halpin's leg. Indeed, it is more probable, we think, that such was the fact than that a bullet

coming from Duffy's revolver should have entered the leg on the inside and taken a downward course and come out lower down on the outside. Duffy was following Halpin and too much to his back for this theory to be true.

Moreover, we do not think it possible for a jury or physician even, from a mere inspection of the scars after the wound had been kept open on the outside of the leg for drainage purposes for some time, to determine or to reach any reliable conclusion as to which side of the leg the bullet entered. Halpin's evidence on this point is contradictory and unreliable.

Considering all the evidence in the record upon this question, we think the verdict of the jury that plaintiff in error Duffy shot Halpin is so manifestly against the great and decisive weight and preponderance of the evidence that the judgment cannot be allowed to stand. We are of the opinion from the evidence that Klausen shot Halpin; and that the evidence preponderates so strongly in favor of plaintiff in error that no verdict or judgment ought ever to be rendered against him in this case upon this evidence. The judgment is therefore reversed, but the cause is not remanded.

This disposition of the case makes it unnecessary for us to consider other errors assigned and argued.

The judgment is reversed with a finding of fact.

*Reversed, with finding of fact.*